Crystal WOOTEN, a minor child by next friend and natural guardian, Becky Brown, Plaintiff–Appellant,

v.

Charlie Lynn LOGAN, individually, and in his capacity as Sheriff of Pickett County, Tennessee, Peggy Dale. Pickett County Sheriff's Department, Defendants–Appellees.

No. 02–5753.

United States Court of Appeals, Sixth Circuit.

Jan. 14, 2004.

Joseph F. Edwards, Edwards & Edwards, John P. Parsons, Parsons & Doyle, Cookeville, TN, for Plaintiff–Appellant.

Charlie Lynn Logan, pro se, Hilham, TN, Thomas M. Donnell, Jr., Jennifer L. Gremillion, Stewart, Estes & Donnell, Nashville, TN, for Defendants–Appellees.

Before KRUPANSKY, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

Plaintiff/appellant Crystal Wooten ("Wooten"), a mentally handicapped minor, claims that she was raped by Peggy Dale ("Dale") and Charlie Lynn Logan ("Logan"), the former sheriff of Pickett County. Tennessee. Wooten, by and through her next friend and natural guardian. Becky Brown, brought the present action against Dale. Logan, and Pickett County, Tennessee (the "County"), alleging a claim under 42 U.S.C. § 1983 and various state law claims. The district court dismissed Wooten's claims against Dale and Logan for failure to serve Dale and Logan within 120 days as required by Fed.R.Civ.P. 4(m). The district court granted summary judgment in favor of the County on the ground that the County was not liable under § 1983 for Logan's actions. Wooten appeals both orders.

Because Wooten has waived her right to appeal the dismissal of the claims against Logan and Dale by failing to object to the magistrate judge's recommendation of dismissal, and because Wooten has not demonstrated that Logan's conduct represented the "official policy" of the County, as required for § 1983 liability to attach to the County, we affirm the judgment of the district court.

## BACKGROUND

Wooten alleges that Logan, then the Sheriff of Pickett County, and Dale conspired to sexually assault her. According to Wooten's complaint, on May 25, 1999, Dale, who had befriended Wooten's mother, "drove [Wooten] to Pickett County after telling her mother Becky Brown that she would have the child spend the night with her." J.A. at 10, ¶ 12. As prearranged, Logan stopped the vehicle "with the use of a Pickett County Sheriff's car and Sheriff's lights." J.A. at 8, ¶ 5. Then, Logan and Dale "convinced the mentally retarded Crystal Wooten to engage in oral intercourse, digital penetration and sexual intercourse on two occasions over a two hour period." J.A. at 10, ¶¶ 12–13. During the encounter, Logan "wore the uniform, badge and gun as High Sheriff of Pickett County and acted under his authority as chief law enforcement officer for Pickett County, Tennessee." J.A. at 10, ¶ 14.

Also according to Wooten's complaint, on July 7, 2000, Logan and Dale entered guilty pleas to four counts of statutory rape, class E felonies under Tennessee law. J.A. at 11, ¶ 17. On September 15, 2000, Dale pled guilty to four additional counts of statutory rape. *Id.*

On October 10, 2000, Wooten, by and through her next friend and natural guardian, Becky Brown, filed suit against Logan, Dale, and the County[1] in the Unit-

---

1. Actually, Wooten filed suit against the Sheriff's Department of Pickett County, Tennessee. J.A. at 7. However, Pickett County, Tennessee, was substituted for the sheriff's department. R. 23.

ed States District Court for the Middle District of Tennessee. J.A. at 7. Wooten asserted § 1983 (alleging a Fourth Amendment violation), § 1985, assault and battery, outrageous conduct, and false imprisonment claims against the defendants. J.A. at 7–12.

On July 6, 2001, the district court entered an order granting summary judgment in favor of the County, ruling that the County could not be held liable for Logan's actions. It noted that local governmental units may be liable under § 1983 for the actions of an official if the official possesses final authority to establish municipal policy with respect to the action ordered. R. 23, at 4. However, it concluded that, although Logan was "the county's final policymaker with regard to enforcement of the law," Logan's alleged criminal conduct "did not establish or constitute 'a municipal policy.'" R. 23, at 5.

On April 12, 2002, the magistrate judge assigned to the case entered an order stating that (1) Wooten had not served Logan and Dale within 120 days as required by Fed.R.Civ.P. 4(m),[2] and (2) he would recommend the action be dismissed without prejudice unless Wooten demonstrated good cause for her failure to effect timely service. R. 32. Wooten did not respond to the magistrate judge's order, and, on April 30, 2002, the magistrate judge issued a Report and Recommendation (the "Recommendation") that recommended the dismissal of Logan and Dale without prejudice. J.A. at 13–14. Wooten did not file any objections to the Recommendation, and, on May 20, 2002, the district court entered an order adopting the Recommendation. J.A. at 15.

On June 13, 2002, Wooten filed a timely notice of appeal, J.A. at 16.

## ANALYSIS

### 1. Summary Judgment Ruling in Favor of the County.

█ The district court properly entered summary judgment in favor of the County because Wooten has not demonstrated that Logan's conduct represented the "official policy" of the County, as required for the County to be held liable under § 1983.

This Court reviews a district court's grant of summary judgment de novo. Williams v. Gen'l Motors Corp., 187 F.3d 553, 560 (6th Cir.1999). The evidence should be viewed in the light most favorable to the non-moving party, and summary judgment should be granted only where there is no genuine issue of material fact. Id.

It is true that § 1983 applies to local governments. Meyers v. City of Cincinnati, 14 F.3d 1115, 1117 (6th Cir.1994) (citing Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). However, a local government is liable as an entity only when the government itself has committed the constitutional violation, not when the violation was committed by its employees. Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir.1993). As the Supreme Court has explained, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may be fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694, 98 S.Ct. 2018. This "official policy" requirement was intended to distinguish "the acts of the municipality from

**2.** Wooten served Logan and Dale on December 13, 2001, more than a year after filing her complaint. J.A. at 37–40. Logan filed an answer on February 5, 2002. J.A. at 41. Dale has not filed an answer.

acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (emphasis in original).

Under appropriate circumstances, a single act by a local government official can constitute the government's "official policy." Specifically, an act represents "official policy," and liability under § 1983 attaches, where the official "possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481, 106 S.Ct. 1292. As the Supreme Court has explained, if the decision to take an action is properly made by the government's authorized decision-maker, "it surely represents an act of official government 'policy' as that term is commonly understood." *Id.* However, a local government cannot be made liable by application of the doctrine of *respondeat superior;* thus, for *Pembaur* to apply, the official must be responsible "for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 483, 106 S.Ct. 1292.

The district court concluded that the County could not be held liable under *Pembaur* for Logan's act of rape. It held that, as sheriff, Logan was the County's "final policymaker with regard to enforcement of the law." R. 23, at 5. However, it further held that Logan's act of rape "did not establish or constitute a 'municipal policy.'" *Id.* It reasoned that Logan's conduct was not "designed to guide future decision making or in furtherance of some governmental body's high-level overall plan." *Id.*

On appeal, Wooten renews her argument that, under *Pembaur*, the County is liable for Logan's conduct. Though opaque, Wooten's argument appears to proceed as follows: (1) as sheriff, Logan was the County's final policymaker with regard to the enforcement of the law; (2) Logan was able to detain and rape Wooten only "because he was the sheriff of Pickett County" and had access to "the instruments of his power–his patrol car, his blue lights, his uniform, his badge"; and, therefore, (3) the County is liable for Logan's actions.

Fatally, Wooten has not demonstrated that Logan's conduct represented the "official policy" of the County, as she has not shown that Logan was acting in a policymaking capacity when he detained and assaulted her. Logan conspired with a non-employee to commit a felonious act, and his conduct cannot conceivably be characterized as exercising a power to set policy.[3] Moreover, though he allegedly

---

**3.** In *Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996), the Fifth Circuit reviewed a district court judgment obtained by a rape victim against a sheriff-perpetrator and his county. In that case, the victim shot her husband, possibly in self-defense, and fled to a neighboring county, where she turned herself into the authorities. *Id.* at 583. The sheriff retrieved the victim from the neighboring county, and, during their drive, he was "mildly aroused by the way in which [the victim] touched him as he lit a cigarette for her." *Id.* Later, after the victim had been fingerprinted, photographed, and given *Miranda* warnings by deputies, and then returned to her house,

the sheriff visited her at her house. *Id.* He made the visit because he wanted to assuage the victim's concern that her husband's friends would attack her and because of the earlier titillation. *Id.* After some initial conversation, the sheriff-perpetrator forced himself on the victim, telling her "I can do what I want, I'm the Sheriff" (*id.* at 589). and "What are you complaining about? I could have thrown you in jail and sorted it out later." *Id.* at 583.

The Fifth Circuit held, *inter alia*, that the rape constituted the county's "official policy." *Id.* at 586. The court's brief analysis could be questioned as effectively providing for *respon-*

used his "blue lights and police lights" to pull over Dale's car, and utilized his "uniform, badge, and gun" to effectuate the rape, Logan acted in the guise of a patrol officer making a traffic stop–not as chief law enforcement officer.[4]

Given these alleged facts, Wooten can state a claim against the County only if every "law enforcement" activity (*e.g.,* stop, arrest, etc.) by a sheriff (or other chief law enforcement official)–whether a matter of official business or a misuse of power to advance a private agenda–represents the "official policy" of the local government. Such a rule would contravene *Pembaur's* attempt "to distinguish acts of the *municipality* from acts of *employees* of the municipality." *Pembaur,* 475 U.S. at 469, 106 S.Ct. 1292 (emphasis in original), and would institute the doctrine of *respondeat superior.* Accordingly. Logan's conduct cannot represent "official policy," and the County is not liable for Logan's conduct.

### 2. Dismissal of Claims Against Logan.

■ Wooten waived her right to appeal the dismissal of the claims against Logan

by failing to object to the Recommendation.[5] A party who does not file timely objections to a magistrate judge's report and recommendation, after being advised to do so, waives her right to appeal. *Mattox v. City of Forest Park,* 183 F.3d 515, 519 (6th Cir.1999); *Smith v. Detroit Fed'n of Teachers, Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987).

In the case *sub judice,* Wooten did not file any objections to the Recommendation. notwithstanding a clear warning in the Recommendation that Wooten could waive her right to appeal by failing to object.[6] Nor has she ventured any excuse for this failure. Thus, Wooten has waived her right to appeal the dismissal of the claims against Logan.

### CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.

KAREN NELSON MOORE, Circuit Judge, dissenting.

---

deat superior. In any event, the case is distinguishable. In *Bennett,* the sheriff was acting as sheriff and indeed boasted. "I can do what I want. I'm the Sheriff." *Id.* at 589. In the instant case by contrast, the sheriff abused his power in a way that any lower level law enforcement officer could abuse his power.

4. Wooten cites *Brown v. Miller,* 631 F.2d 408 (5th Cir.1980), in support of her argument that the mere combination of Logan's status as chief law enforcement and his use of law enforcement tools during the assault (*e.g.,* lights, siren, badge, gun, etc.) renders the County liable for his conduct. However, *Brown* simply stands for the proposition that an individual acts "under color of state law" when "the act was accomplished by misuse of power possessed by virtue of state law and made possible only because the wrongdoer was clothed with the authority of state law." *Id.* at 411 (internal quotation omitted). Just because an individual acts "under color of

state law" does not mean that the individual also acts as an "official policymaker."

5. Wooten does not appear to challenge the district court's dismissal of the claims against Dale. *See* Appellant's Br. at 8. However, if she does, the following analysis applies equally.

6. Specifically, the Recommendation read as follows:

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.... Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.

J.A. at 14.

MOORE, Circuit Judge.

While I agree with Part 2 of the majority's opinion, affirming the dismissal of claims against Logan, I believe that the majority takes too narrow a view of a municipality's liability for the actions of its policymaking officials. I believe the district court was in error to enter summary judgment in favor of the County, and I therefore dissent from Part 1 of the majority's opinion.

It is well settled that municipal liability can attach to "a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). It is equally well settled that in Tennessee, the county sheriff is a municipal policymaker with respect to law enforcement. *See Spurlock v. Sumner County,* 42 S.W.3d 75, 77, 82 (Tenn. 2001). Therefore, the only question before us is whether Logan made a decision vis-à-vis municipal policy in committing the alleged acts. I believe this question is most easily answered by comparing our actual situation to a hypothetical one in which a deputy sheriff had asked Logan if he could use his squad car, his uniform, his badge, and his gun to make a traffic stop for the purpose of sexually brutalizing the car's occupant, and Logan had allowed that behavior as appropriate. In such a case, the municipality would certainly be liable for the actions of the deputy, as Logan had power to set law enforcement policy in the municipality, and chose to set policy that allowed officers to use the power of their office to sexually assault citizens. That Logan committed the alleged assault himself makes no difference; the chief law-enforcement officer of Pickett County, Tennessee, is alleged to have ratified a policy of using the power of law enforcement to effectuate rape, and the County should be responsible for such a policy.

At least one other circuit court has reached the same conclusion in a similar case. The majority attempts to distinguish *Bennett v. Pippin,* 74 F.3d 578 (5th Cir.1996), by stating that in *Bennett,* the sheriff used his position as sheriff to assault his victim, whereas here, "the sheriff abused his power in a way that any lower level law enforcement officer could abuse his power." *Maj. op.* at 7 n. 3. I find this unconvincing; the importance of Logan's position as sheriff is his ability to create policy. Whether that policy allows the abuse only of his office, or of all law-enforcement offices, is irrelevant. It is not the greater power of the sheriff to force sexual acts from the citizenry that matters; it is the greater power of the sheriff to set the policy of the municipality to allow such reprehensible acts to happen under the color of state law that is at issue.

Two further circuit court cases hold municipalities liable for personal misconduct by an official policymaker within the area of their policymaking positions, albeit in less bizarre circumstances than those we confront here. In *Turner v. Upton County,* 915 F.2d 133, 136–37 (5th Cir.1990). a county was held liable for a sheriff's alleged conspiracy to frame an innocent citizen, based entirely his status as a final policymaker: the court explained that this did "not run afoul of *Monell'*s admonition against *respondeat superior* liability" because the "sheriff is an elected county official [and] his actions are as much the actions of the county as the actions of those [county] commissioners." *Id.* at 137. In *Williams v. Butler,* 863 F.2d 1398, 1399 (8th Cir.1988), the City of Little Rock was similarly held liable where an elected traffic court judge with final policymaking authority over his employees' hiring and firing terminated and harassed into quitting two employees who threatened to tell the police about his deliberate destruction of

traffic tickets. Whenever a municipal officer's malfeasance is approved as the official policy of a municipal organization by a policymaker with power over the matter, it does not matter whether the malfeasant officer is also the approving policymaker.

I respectfully dissent. I would reverse and remand for further proceedings consistent with this opinion.