Jan DOE, Plaintiff,

v.

Lloyd Monk PATTON,
et al., Defendants.

No. 7:01–278–DCR.

United States District Court,
E.D. Kentucky,
Pikeville Division.

Jan. 6, 2005.

Order Denying Reconsideration
Jan. 14, 2005.

Ned B. Pillersdorf, John Rosenburg, Pillersdorf, Derossett & Lane Prestonsburg, KY, for plaintiff.

Jonathan C. Shaw, Michael J. Schmitt, Porter, Schmitt, Jones & Banks, Paintsville, KY, for defendant Magoffin County Fiscal Court and Paul Hudson Salyer, as County Judge Executive.

Jason F. Williams, Leroy Arlis Gilbert, Jr., Farmer, Kelley, Brown & Williams, London, KY, for defendant Lloyd Patton.

## MEMORANDUM OPINION AND ORDER

REEVES, District Judge.

This matter is pending for consideration of motions for summary judgment filed by Magoffin County and Paul Salyer [Record No. 112] and Lloyd Patton [Record No. 114]. The motions are in response to a suit brought by Jan Doe claiming that her Fourth and Eighth Amendment rights were violated when Patton allegedly raped her. She also claims that Magoffin County and Salyer were negligent in hiring and supervising Patton. Doe sues Patton and Salyer both in their individual and official capacities.

For the reasons discussed below, the Court will grant summary judgment to Patton with respect to the claims asserted against him in his official capacity and deny summary judgment with respect to the claims asserted against him individually. In addition, the Court grant Magoffin County and Salyer's motion for summary judgment and dismiss all claims asserted against them.

## I. BACKGROUND [1]

In July 2001, Doe, then a minor, was ordered to perform community service at the Magoffin County Courthouse. Patton was the janitor for the courthouse. He was hired to that position by Salyer. On July 11, 2001, Patton allegedly raped Doe in the jury room of the courthouse, forming the basis for Doe's complaint. And although charged in state court for the subject rape that allegedly occurred nearly three and one-half years ago, that matter has been continued on several occasions.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.,* 285 F.3d 415 (6th Cir.2002). Once the movant has satisfied this burden, the non-movant must go beyond the assertions made in the pleadings and come forward with specific evidence to demonstrate that there is a genuine issue of material fact. *Id.* The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex,* at 324, 106 S.Ct. 2548. However, the trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact. *In re Morris,* 260 F.3d 654 (6th Cir.2001). The nonmoving party has an affirmative obligation to direct the court's

1. The Court will limit its recitation of the relevant facts due to the late filing of these motions and the need for prompt resolution of these claims.

attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact. *Id.* In determining whether there are any genuine issues of material fact, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. LEGAL ANALYSIS

### A. Patton's Motion [Record No. 114]

#### 1. Acting Under Color of State Law

■ Patton first notes that "[t]o prove a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Patton argues that he was not "acting under color of state law" at the time in question.

■ Patton notes that no statute or court order gave him the specific authority to oversee Doe during her community service. As the Supreme Court has instructed, however:

> [t]o constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible and the party charged with the deprivation must be a person who may fairly be said to be a state actor. State employment is generally sufficient to render the defendant a state actor. It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.

*West v. Atkins*, 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citations and quotations omitted). In this case, factual evidence exists demonstrating that Patton's actions occurred: (1) during his employment, (2) at his place of employment, and (3) by virtue of his official position. Patton need not have an explicit order to oversee Doe in order to act under color of state law. In fact, "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State," as Patton allegedly did. *Id.* Thus, the evidence supports Doe's claim that Patton's conduct occurred "under color of state law."

#### 2. Official Capacity Claims

■ Doe sued Patton in his official and individual capacity. Patton correctly notes that Section 1983 claims are not cognizable against *state* officials sued in their official capacity. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, suits brought against *local* governments and their officials, such as Magoffin County and Salyer are cognizable under Section 1983. *Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir.2004) (citing *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *see also Will*, 491 U.S. at 70, 109 S.Ct. 2304 ("our holding here does not cast any doubt on *Monell*, and applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes").

Such official capacity suits, however, are essentially suits against the government body they represent. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). As the Supreme Court explained,

[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation; thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law.

*Id.* at 166, 105 S.Ct. 3099 (1985) (citations omitted) (emphasis in original). Patton's alleged act of rape cannot be considered a "policy or custom" of the county. Thus, the official capacity claims against him must be dismissed. *Wooten v. Logan,* 92 Fed.Appx. 143, 145–47 (6th Cir.2004) (holding that a rape committed by a county sheriff could not be considered part of the county's "policy or custom" and thus affirming district court's dismissal of claims against the county). Doe also has not offered any evidence or otherwise demonstrated that Patton was responsible for setting county policy. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

**B. Magoffin County & Salyer's Motion [Record No. 112]**

**1. Section 1983 Claims**

Magoffin County and Salyer (the "County Defendants") make numerous arguments regarding vicarious liability, sovereign immunity, official immunity, and qualified official immunity with regard to Doe's 1983 claims. The Court, however, will confine its discussion to relevant Supreme Court cases which establish the requirements for a plaintiff to bring a successful § 1983 claim against a local government for negligent hiring.

█ The discussion must begin by noting that the County Defendants cannot be vicariously liable for Patton's alleged acts. As the Supreme Court has noted:

[i]n *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), we decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. *Id.,* at 694–695, 98 S.Ct. 2018. "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." *Springfield v. Kibbe,* 480 U.S. 257, 267, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting) (quoting *Monell,* [436 U.S.] at 694, 98 S.Ct. 2018). Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.

*City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (emphasis in original). The Sixth Circuit recently explained:

[m]unicipalities and other bodies of local government may be sued pursuant to 42 U.S.C. § 1983 if they are "alleged to have caused a constitutional tort through 'a policy statement ordinance, regulation. or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (citing *Monell,* 436 U.S. at 690, 98 S.Ct. 2018). Section 1983 also "authorizes suit 'for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.'" *Id.* (citing *Monell,* 436

U.S. at 690–91, 98 S.Ct. 2018). Although a § 1983 plaintiff might not be able to demonstrate that a written policy exists, he or she "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. (citation and quotation marks omitted).

This court has explained that a "custom" for the purposes of § 1983 liability must be so permanent and well settled as to constitute a custom or usage with the force of law, In turn, the notion of 'law' must include deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a 'custom' is a 'legal institution' not memorialized by written law. *Doe,* 103 F.3d at 507–508 (citations and quotation marks omitted). Not only must the plaintiffs show that the City and County as entities caused the constitutional violation, but they "must also show a direct causal link between the custom and the constitutional deprivation." *Id.* at 508. "This requirement is necessary to avoid de facto *respondeat superior* liability explicitly prohibited by *Monell.*" *Id.*

*Cash v. Hamilton County Dept. of Adult Probation,* 388 F.3d 539, 542–43 (6th Cir. 2004).

This prohibition against *respondeat superior* liability in Section 1983 claims led the Supreme Court to examine a § 1983 claim in which the plaintiff claimed a municipal government was liable for its negligent hiring of a deputy sheriff who had seriously injured a woman during a traffic stop. *Bd. of County Comm's of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In 1991, Reserve Deputy Burns pursued a car which had suddenly turned around when approaching a police checkpoint. He caught up with the car and pulled it over. Burns twice ordered the occupants from the vehicle. When the occupants did not exit, "he used an 'arm bar' technique, grabbing respondent's arm at the wrist and elbow, pulling her from the vehicle, and spinning her to the ground. Respondent's knees were severely injured, and she later underwent corrective surgery. Ultimately, she may need knee replacements." *Id.* at 400–401, 117 S.Ct. 1382.

When hiring Burns, the Sheriff (the uncle of Morrison's father) failed to adequately review Burns' background. Had he done so, he would have learned that Burns had "pleaded guilty to various driving-related and other misdemeanors, including assault and battery, resisting arrest, and public drunkenness." *Id.* at 401, 117 S.Ct. 1382. The plaintiff claimed that the local government was negligent in hiring Burns, given his criminal background.

The Supreme Court was troubled that such a claim was essentially holding the municipality vicariously liable for the torts of its employees, in express contravention of *Monell.* The Court first noted that municipal liability must be traceable to a municipal "policy" or "custom." *Id.* at 403, 117 S.Ct. 1382. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 403–404, 117 S.Ct. 1382. The Court was troubled by the causal link between a hiring decision and later employee conduct, noting that:

> [w]here a plaintiff presents a § 1983 claim premised upon the inadequacy of an official's review of a prospective ap-

plicant's record, however, there is a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself. Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a "but-for" sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

*Id.* at 410, 117 S.Ct. 1382.

■ To establish municipal liability for negligent hiring, the Court held, the plaintiff must demonstrate that the municipal action "was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Id.* at 407, 117 S.Ct. 1382 (citation omitted), Further,

> a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.

*Id.* at 412, 117 S.Ct. 1382 (emphasis in original). Thus, the Supreme Court held that "Sheriff Moore's hiring decision could not have been 'deliberately indifferent' unless in light of [Burns' criminal record] Burns' use of excessive force would have been a plainly obvious consequence of the hiring decision." *Id.* at 415, 117 S.Ct.

1382. Despite Burns' previous assault and battery, resisting arrest, public drunkenness, driving with a suspended license, and driving under the influence convictions, the Court held that it was not "plainly obvious" that the hiring of Burns would have led to Burns' use of excessive force. In fact, the Court was suspicious of whether any single hiring decision could ever result in a Section 1983 violation. *Id.* at 412, 117 S.Ct. 1382.

■ In this case, a background check would have revealed convictions for: disorderly conduct, influencing a voter in completing an absentee ballot, vote buying, as well as numerous arrests for public intoxication. This criminal record "may well have made [Patton] an extremely poor candidate" for the janitor position, *id.* at 414, 117 S.Ct. 1382, but it did not make it "plainly obvious" that Patton would forcibly rape Doe. The only incident involving any sort of violence occurred in 1995. Patton allegedly hit the previous Judge Executive over the head with a liquor bottle. Doe claims that the assault was politically motivated. This single incident, however, bears no resemblance to Patton's alleged sexual assault the previous assault was politically motivated, against a male, and was not sexual in any way. Moreover, the previous assault had occurred almost six years before the alleged sexual assault. In *Brown*, the Supreme Court found that Burns' previous conviction for assault and battery did not make it "plainly obvious" that Burns would use excessive force during a traffic stop. *Id.* at 413–14, 117 S.Ct. 1382. The criminal record does not indicate that Patton had any history of violence towards women, violence towards minors, kidnaping, or any type of sexual assault. Instead, the only incident of violence involved a political dispute and in no way resembled the alleged assault on

Doe.[2]

Let there be no doubt Patton's alleged acts are *reprehensible* and *unconscionable*. Whether Magoffin County and Salyer, however, are responsible for the alleged acts is another matter. As the Supreme Court held in *Brown,* government officials can only be causally connected to the constitutional deprivation if they displayed "deliberate indifference," meaning that a reasonable investigation would have made it "plainly obvious" that the employee would commit the constitutional deprivation which forms the basis of the 1983 action. *Id.* at 414, 117 S.Ct. 1382. In this case, despite Patton's criminal record, it would not have been "plainly obvious" that Patton would lock Doe in a jury room and sexually assault her. In fact, the record would have indicated that Patton *did not* have the propensity to commit such crimes.[3]

### 2. State Law Claims

#### a. Sovereign Immunity

 Magoffin County and Salyer (in his official capacity) claim that they are protected by the doctrine of sovereign immunity for Doe's state law claims. County governments in Kentucky are cloaked in sovereign immunity, unless such immunity is expressly waived. *Schwindel v. Meade County,* 113 S.W.3d 159, 163 (Ky.2003). Under federal case law, however, sovereign immunity does not apply to county governments. *Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97

S.Ct. 568, 50 L.Ed.2d 471 (1977); *S.J. v. Hamilton County, Ohio,* 374 F.3d 416, 419–20 (6th Cir.2004). States cannot abrogate § 1983 liability in federal courts simply by extending sovereign immunity through state common law. *Howlett v. Rose,* 496 U.S. 356, 110 .S.Ct. 2430, 110 L.Ed.2d 332 (1990).

However, with regard to the *state law claims,* Kentucky's extension of sovereign immunity is effective. *See Criswell v. Wayne County, Ky.,* 165 F.3d 26, 1998 WL 598739 (6th Cir.1998) (holding that Kentucky's extension of sovereign immunity to county governments was effective for pendant state law claims in a § 1983 action). Thus, unless waived, Magoffin County and Salyer are entitled to sovereign immunity for the state law claims. *Schwindel,* 113 S.W.3d at 163; *Yanero v. Davis,* 65 S.W.3d 510, 522 (Ky.2001). Doe has produced no such evidence of waiver in this case. There is, however, a limited waiver of liability for government employees for the negligent performance of ministerial duties. *Id.* at 524. As discussed *infra,* however, Salyer was not performing a ministerial duty.

#### b. Qualified Official Immunity

 Salyer claims that he is also protected by qualified official immunity for the state law claims brought against him in his individual capacity. "Through the use of qualified immunity, the law shields 'government officials performing discretionary functions . . . from civil damages liability

---

**2.** Doe also references some alleged "uncharged conduct" involving an attempted arson and an alteration with a detective. (Pf.'s Resp. at 3–4.) These incidents, however, were never prosecuted or proven and Salyer would not have learned of them through a criminal history investigation.

**3.** In order to establish that local government liability can attach under § 1983, Doe was

also required to demonstrate that Salyer was responsible "for establishing final government policy respecting such activity." *Pembaur,* 475 U.S. at 483, 106 S.Ct. 1292. Because the parties did not address this issue, and because the Court finds that Doe's 1983 hiring claims fail on other grounds, the Court will not discuss this issue.

as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 172 (6th Cir.2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

In delineating the distinction between discretionary and ministerial duties, the Sixth Circuit and the Kentucky Supreme Court have recognized that:

> [t]he essence of a discretionary power is that the person or persons exercising it may choose which of several courses will be followed. The power to exercise an honest discretion necessarily includes the power to make an honest mistake of judgment.... Discretionary ... duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and *discretion in determining ... whether the act shall be done or the course pursued.*

*Minger v. Green*, 239 F.3d 793, 798 n. 2 (6th Cir.2001) (quoting *Franklin County v. Malone*, 957 S.W.2d 195, 201 (Ky.1997))[4] (emphasis added). As the *Yanero* Court held, discretionary functions are those that "involve the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Yanero*, 65 S.W.3d at 522 (citation omitted). Conversely, the Second Restatement describes ministerial functions in the following manner:

> If an act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act, there is no immunity or privilege. These acts are commonly called "ministerial," or sometimes "operational." The distinction is always one of degree. Ministerial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how or under what circumstances their acts are to be done. Examples of acts held to be ministerial under ordinary circumstances are the preparation of ballots, the registration of voters, the recording of documents and filing of papers, the care of prisoners, the driving of vehicles, the repair of highways, the collection of taxes, the taking of acknowledgments and the dipping of sheep. Yet under particular fact circumstances each of them may be held to involve the exercise of discretionary decision.

Restatement (Second) of Torts § 895D cmt. h (1979). As the Kentucky Supreme Court explained, a ministerial duty "requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero*, 65 S.W.3d at 522.

 Salyer's decision not to perform a background check on Patton was a discretionary function. It required the exercise of judgment and the action was not mandated by any written policy. He was neither required to perform a background check, nor was he prohibited from doing so. It appears that there were no regulations pertaining to Patton's hiring. As such, Salyer had complete discretion in the manner in which he selected employees. Such a decision was not one that required "only obedience to the orders of others." *Id.* Similarly, Salyer's supervision of Patton was entirely discretionary and Doe has not demonstrated any ministerial duties Salyer violated in his supervision of Patton.

**4.** *Malone* was overruled on other grounds by *Yanero.*

Determining whether a government official was performing a discretionary act, however, does not end the qualified immunity analysis. After concluding that an official's decisions are discretionary in nature, courts engage in a three-step inquiry for claims of qualified immunity:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003) (quotation omitted). Kentucky courts refer to this analysis as a test of whether the defendant acted in "good faith." *Yanero*, 65 S.W.3d at 523.

In this case, while there may have been a constitutional violation, that violation was allegedly committed by Patton. As the Supreme Court held in *Brown*, such a violation cannot be causally traced to the hiring official unless it would have been "plainly obvious" to the official when he hired the employee, had he performed a reasonable criminal investigation, that the employee would commit the particular constitutional violation of which he is accused. As discussed *supra*, Doe has not made such a showing in this case and Salyer cannot be causally linked to Patton's alleged constitutional violation. Accordingly, this Court must conclude that Salyer acted in good faith under the standards set out above. He, therefore, is entitled to qualified official immunity for the state

claims brought against him in his individual capacity.

## IV. CONCLUSION

For the reasons discussed above, it is hereby **ORDERED** as follows:

(1) Magoffin County and Salyer's motion for summary judgment [Record No. 112] is **GRANTED**;

(2) Patton's motion for summary judgment [Record No. 114] is **GRANTED**, with respect to the official capacity claims, and **DENIED**, with respect to the individual capacity claims;

(3) The motions to add additional exhibits [Record Nos. 116–17] are **GRANTED** and the Clerk shall file those exhibits with the corresponding motions for summary judgment [Record Nos. 113, 115]; and

(4) The Clerk of the Court shall, in addition to regular mail, fax a copy of this Order to the counsel of record.

## MEMORANDUM OPINION AND ORDER ON RECONSIDERATION

This matter is pending for consideration of Jan Doe's motion to reconsider this Court's January 6, 2005 summary judgment opinion. [Record No. 126] In its earlier opinion, this Court dismissed the official capacity claims against Lloyd Patton and dismissed all claims against Paul Salyer and Magoffin County (collectively, "Magoffin County"). Doe's current motion primarily discusses the state law claims of negligent hiring and supervision against Magoffin County, with only a cursory reference to the § 1983 claim. Although Magoffin County has yet to respond, the Court does not find that a response is necessary. For the reasons discussed herein, the Court will deny the motion.

## I. BACKGROUND

In July 2001, Doe, then a minor, was ordered to perform community service at the Magoffin County Courthouse. Lloyd Monk Patton was the janitor for the courthouse. He was hired to that position by Salyer. On July 11, 2001, Patton allegedly raped Doe in the jury room of the courthouse, forming the basis for Doe's complaint. Although charged in state court for the subject rape that allegedly occurred nearly three and one-half years ago, that matter has been continued on several occasions. The parties have represented that Doe has recently settled her civil claims against Patton.

## II. LEGAL STANDARD

Doe does not identify the basis for her motion, but presumably, she is relying upon Rule 59(e) of the Federal Rules of Civil Procedure, which authorizes motions to reconsider. "A motion under Rule 59(e) is not intended to provide the parties an opportunity to relitigate previously-decided matters or present the case under new theories. Rather, such motions are intended to allow for the correction of manifest errors of fact or law, or for the presentation of newly discovered evidence." *In re Larson*, 103 B.R. 896, 897 (Bkrtcy.S.D.Ohio 1989). *See also General Truck Drivers Local No. 957 v. Dayton Newspapers, Inc.*, 190 F.3d 434, 445 (6th Cir.1999) (Clay, J. dissenting), *cert. denied*, 528 U.S. 1137, 120 S.Ct. 980, 145 L.Ed.2d 931 (2000) ("Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become available; or (3) because it is necessary to correct a clear error of law or prevent manifest injustice."); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998) ("A

motion under Rule 59(e) is not an opportunity to re-argue a case."); *Harley–Davidson Motor, Inc. v. Bank of New England*, 897 F.2d 611, 616 (1st Cir.1990) ("Rule 59(e) motions are aimed at *re* consideration, not initial consideration.") (emphasis in original); *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986) ("Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These cannot be used to raise arguments which could, and should, have been made before the judgment issued."). Thus, the party seeking reconsideration cannot simply seek a second bite of the apple and it bears "[t]he burden of demonstrating the existence of a manifest error of fact or law." *In re Nosker*, 267 B.R. 555, 565 (Bankr.S.D.Ohio 2001).

## III. LEGAL ANALYSIS

Doe points out that in *Yanero v. Davis*, 65 S.W.3d 510 (Ky.2001), the Kentucky Supreme Court held that sovereign and qualified official immunity can be waived in certain circumstances in state negligent hiring claims. The Court stated,

[e]valuating the credentials of a prospective employee is an inherently subjective process which, of course, is the essence of a discretionary function. However, there is also a ministerial aspect to the hiring process in that the person or persons to whom the hiring of subordinates is entrusted must at least attempt to hire someone who is not incompetent. Thus, there is authority for the proposition that a public officer can be subject to personal liability in tort for hiring an employee known to that officer to be incompetent to perform the task for which he/she was hired.

*Id.* at 528. Thus, the court properly recognized the largely discretionary nature of

hiring decisions, while recognizing that at some minimal level the decision is ministerial, in that the employer "must at least attempt to hire someone who is not incompetent" and is "able to perform the task for which he/she was hired." *Id.*

Doe has provided no evidence that Patton was incompetent to be the janitor for the courthouse. While his previous convictions for disorderly conduct, influencing a voter in completing an absentee ballot, vote buying, and public intoxication may not have made him a stellar candidate, it certainly did not render him "incompetent" to be a janitor.[1] To the extent that Magoffin County had a minimal ministerial duty to not hire someone "incompetent" to perform janitorial services, it satisfied this requirement in its hiring of Patton. Likewise, Doe has not introduced evidence that Patton lacked the qualifications for his position, as was alleged in *Yanero,* and the available evidence did not suggest that Patton was incapable of performing janitorial services.

Doe's complaint, therefore, is not really that Magoffin County negligently hired someone incompetent to perform his job as a janitor, but rather, that Magoffin County was negligent in hiring someone incompetent to supervise people performing community service. This, however, does not implicate *Yanero 's* limited exception to the traditional notion that hiring decision are purely discretionary in nature because there is no evidence that Patton was hired to supervise people performing community service; rather, he was hired as a janitor. While he may have occasionally been ordered to oversee people performing com-

munity service on an informal basis, this was not "the task for which he was hired." *Id.; see also* Sayler Depo. at 18 (noting the informal nature of Patton's role in the oversight of people performing community service). In addition, Patton was not authorized to supervise juveniles. (Sayler Depo. at 19.) Thus, this case does not fall under *Yanero 's* limited exception to the general proposition that hiring decisions are discretionary because Magoffin County did not hire someone who was incompetent with respect to his job as a janitor.

In delineating the distinction between discretionary and ministerial duties, the Sixth Circuit and the Supreme Court of Kentucky have recognized that:

> [t]he essence of a discretionary power is that the person or persons exercising it may choose which of several courses will be followed. The power to exercise an honest discretion necessarily includes the power to make an honest mistake of judgment.... Discretionary ... duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and *discretion in determining ... whether the act shall be done or the course pursued.*

*Minger v. Green,* 239 F.3d 793, 798 n. 2 (6th Cir.2001) (quoting *Franklin County v. Malone,* 957 S.W.2d 195, 201 (Ky.1997))[2] (emphasis added). As the *Yanero* Court held, discretionary functions are those that "involve the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Yanero,* 65 S.W.3d at 522 (citation omitted). Conversely, the

---

1. Doe notes that the Court referenced some "uncharged conduct" in its Section 1983 analysis of the summary judgment opinion, noting that Magoffin County was unaware of such conduct. Doe points out that Salyer was aware of one of these incidents, *i.e.,* an allegation that Patton tried to burn down his broth-

er's house. That incident, however, does not impact this Court's 1983 analysis or its discretionary function analysis.

2. *Malone* was overruled on other grounds by *Yanero.*

Second Restatement describes ministerial functions in the following manner:

> If an act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act, there is no immunity or privilege. These acts are commonly called "ministerial," or sometimes "operational." The distinction is always one of degree. Ministerial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how or under what circumstances their acts are to be done. Examples of acts held to be ministerial under ordinary circumstances are the preparation of ballots, the registration of voters, the recording of documents and filing of papers, the care of prisoners, the driving of vehicles, the repair of highways, the collection of taxes, the taking of acknowledgments and the dipping of sheep. Yet under particular fact circumstances each of them may be held to involve the exercise of discretionary decision.

Restatement (Second) of Torts § 895D cmt. h (1979). As the Kentucky Supreme Court explained, a ministerial duty "requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero,* 65 S.W.3d at 522.

Salyer's decision not to perform a background check on Patton was a discretionary function, as was his decision to hire Patton. Both decisions required the exercise of judgment and the actions were not mandated by any written policy. Salyer was neither required to perform a background check, nor was he prohibited from doing so. Moreover, people in county government testified that background checks were unnecessary in such a small town, where everyone knows everyone else. (Hardin Depo. at 12, 16; Gullett Depo. at 16; Hensley Depo. at 14–15.) Sayler also had complete discretion in determining whom to hire. As such, Salyer's decision not to perform a background check and his decision to hire Patton were not ones that required "only obedience to the orders of others" and thus they did not involve a "ministerial duty." *Id.* Magoffin County satisfied any minimal ministerial duty it had by hiring someone who was not incompetent to perform janitorial services.[3]

Doe also cites language from *Yanero* discussing the ministerial aspects of certain negligent supervision claims. The decision states, in relevant part:

> Yanero's cause of action against Davis and Becker is essentially one for negligent supervision. Teachers assigned to supervise juveniles during school-spon-

---

**3.** The Court also notes that there are serious questions about the causal link between the hiring of Patton and the alleged assault on Doe. *See Bd. of County Comm's of Bryan County, Ok. v. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (the causal link between a hiring decision and an injury caused by the employee must be carefully tested, examining whether the employee's history made it more likely that he would commit the crime which forms the basis of the suit, in order to prevent turning a negligent hiring claim into *respondeat superior* liability for the employee's conduct); *Jenkins v. Atlas Siding and Window Co.,* No.2003–CA–002416–MR, 2004 WL 2756230 (Ky.App. Dec. 3, 2004) (in a negligent hiring case, holding that employee's prior criminal acts "were not of the same type as the crimes he committed against" the plaintiff and thus finding that the employer's hiring of the employee "was not the proximate cause of [plaintiff's] injuries"). This issue, however, is irrelevant to this Court's conclusion that Magoffin County and Salyer are protected by sovereign immunity and qualified official immunity.

sored curricular or extracurricular activities have a duty to exercise that degree of care that ordinarily prudent teachers or coaches engaged in the supervision of students of like age as the plaintiff would exercise under similar circumstances. The premise for this duty is that a child is compelled to attend school. The result is that the protective custody of teachers is mandatorily substituted for that of the parent. The performance of that duty in this instance was a ministerial, rather than a discretionary, function in that it involved only the enforcement of a known rule requiring that student athletes wear batting helmets during baseball batting practice. *Id.* at 529 (citations omitted). The court held that the teacher's were required by rule to have student athletes wear batting helmets during baseball practice, thus rendering their actions ministerial, rather than discretionary.

Doe next cites *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145 (Ky.2003), in which the Supreme Court of Kentucky held that teachers could be held liable for the negligent supervision of pupils because Kentucky statutes placed strict requirements on teacher supervision of pupils. *Id.* at 150–51 (citing K.R.S. §§ 161.180(1), 160.290); *see also Rone v. Daviess Co. Bd. of Educ.*, 655 S.W.2d 28, 30 (Ky.App.1983) (recognizing teachers' *in loco parentis* status).

In both *Williams* and *Yanero* the court dealt with teacher supervision of students and relied upon the fact that the teachers had failed to uphold specific statutory or regulatory requirements in finding that the teachers had violated a ministerial duty. In this case, Doe has not identified any rule involving Salyer's supervision of Patton or Salyer's supervision of Doe. Thus, she fails to identify which ministerial duty Salyer violated. Moreover, her claim

does not involve Patton's supervision of her, which would be more akin to the *Yanero* case, but instead involves Salyer's supervision of Patton. *See* Amended Compl. at ¶¶ 6, 13.

The Court also notes that Doe did not cite these portions of *Yanero* or *Williams* in responding to Magoffin County's motion for summary judgment. [Record No. 120] "Rule 59(e) motions are aimed at *re* consideration, not initial consideration." *Harley–Davidson*, 897 F.2d at 616 (emphasis in original). "Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Meyer*, 781 F.2d at 1268.

## IV. CONCLUSION

Accordingly, for the reasons discussed herein, it is hereby **ORDERED** that Doe's motion to reconsider [Record No. 126] is **DENIED**.