**Ricardo K. GONZALES, Petitioner,**

v.

**COMMANDANT, UNITED STATES DISCIPLINARY BARRACKS, FORT LEAVENWORTH, KANSAS, et al., Respondents.**

**Civil Case No. 5:12-cv-142-JMH.**

United States District Court,
E.D. Kentucky,
Central Division,
at Lexington.

April 5, 2013.

Order Denying Motion to Amend
Sept. 5, 2013.

Jonathan P. Tomes, Richard D. Dvorak, Tomes & Dvorak, Chartered, Overland Park, KS, for Petitioner.

Cheryl D. Morgan, U.S. Attorney's Office, Lexington, KY, for Respondents.

## AMENDED MEMORANDUM OPINION & ORDER

JOSEPH M. HOOD, Senior District Judge.

This matter is before the Court on Ricardo Gonzales's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [D.E. 1].[1] The United States has responded [D.E. 16], and the time has passed for Petitioner's reply. Thus, this matter is now ripe for review. For the reasons which follow, the petition will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2003, Petitioner, a former captain in the United States Army, was found guilty of several offenses including sodomy with a child under the age of sixteen, unlawful damage of military and non-military property, and making false official statements, among other charges. [D.E. 16–1 at 6–9]. He was originally sentenced to fifteen years of confinement and dismissal from the army. [D.E. 16–1 at 9]. Ultimately, the convening authority only approved a sentence of eleven years and nine months with a sixty-one day confinement credit and dismissal from service. [D.E. 1–1 at 7].

On April 20, 2010, the Army Clemency and Parole Board ("ACPB") informed Petitioner that he would be placed on mandatory supervised release ("MSR") on his minimum release date. [D.E. 16–1 at 14, 26]. As conditions of his MSR, Petitioner was required to enroll in and successfully complete an appropriate child sex offender aftercare program. [D.E. 16–1 at 18–19]. Further, he was told that, if state law so required, he would have to register as a sex offender. [D.E. 16–1 at 19]. Petitioner was instructed to submit an acceptable supervision plan for his MSR, as required by Department of Defense Instruction 1325.7. [D.E. 16–1 at 13–24]; [D.E. 16–10, Instruction 1325.7, at 26 ("The prisoner shall be required to submit a parole plan and agree in writing to abide by that plan.")]. However, Petitioner's submitted plans to live with his wife or sister were denied because his wife was unwilling to accept him into her home, and his sister resided in a one-room studio apartment

1. This Amended Memorandum Opinion and Order is issued solely to reflect a typographical error that the Court noticed after it was filed.

that inspectors determined was inappropriate living space for two adults. [D.E. 16–1 at 24–25].

After these MSR plans were rejected, Petitioner failed to provide acceptable plans at the ACPB's request. [D.E. 16–4 at 10–11]. Accordingly, Petitioner's case was forwarded to a Discipline and Adjustment Board ("DAB") in August 2010, where he was afforded the opportunity to submit evidence and arguments on his behalf. [D.E. 16–4 at 5–16]. The DAB found him guilty of violating a lawful order, and held that he forfeited ninety days of abatement credit as a result; however, Petitioner was informed that if he submitted a valid MSR plan, his credits would be restored. [D.E. 16–4 at 12]. When Petitioner again failed to submit a valid MSR plan, he was brought back before the DAB in November 2010. [D.E. 16–3 at 24–33]. This time, the DAB held that Petitioner forfeited all remaining abatement credits by failing to abide by lawful orders, but was again instructed that the credits would be restored if he submitted a valid plan. [D.E. 16–3 at 25].

Instead of submitting a valid MSR plan, Petitioner remained in confinement and submitted two extraordinary writ appeals to the U.S. Army Criminal Court of Appeals ("ACCA"). [D.E. 16–5 at 1–3]; [D.E. 16–8 at 18–28]; [D.E. 16–9 at 1–13]. The ACCA denied the petitions on June 29, 2010, and July 16, 2010, and, although he appealed both denials to the Court of Appeals for the Armed Forces, they were denied. [D.E. 16–5 at 22–41]; [D.E. 16–8 at 24]. After exhausting his appeals, Petitioner filed a habeas petition in the United States District Court for District of Kan-

sas on July 22, 2010, but he voluntarily withdrew it after the court ordered him to show cause why it should not be dismissed.[2] [D.E. 16–5 at 10–15]; [D.E. 16 at 6].

Petitioner was transferred to the Federal Medical Center in Lexington, Kentucky, ("FMC Lexington") on September 13, 2011. [D.E. 16–3 at 20]. When transferred, Petitioner's minimum release date was August 28, 2013, and his maximum release date was March 20, 2015; however, due to newly earned abatement credits, his current minimum release date rests at May 27, 2013. [D.E. 16–3 at 18–19;6]. Petitioner filed his second habeas petition in this Court on May 7, 2012. [D.E. 1].

## II. STANDARD OF REVIEW

Habeas corpus relief may be granted under 28 U.S.C. § 2241 to a federal prisoner who demonstrates he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "At this stage the Court accepts the petitioner's factual allegations as true and his legal claims are liberally construed in his favor." *Jessiah v. Holland,* No. 12–144–GFVT, 2013 WL 460624, at *1 n. 1 (E.D.Ky. Feb. 6, 2013) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The court must deny the petition 'if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief.'" *Wilkes v. Quintana,* 12–CV–228–JBC, 2013 WL 84931, at *1 (E.D.Ky. Jan. 7, 2013) (citing Rule 4 of the Rules Governing § 2254 Cases in the

---

**2.** Petitioner's first petition sought substantially the same relief as he presently seeks. *Gonzales v. United States,* 5:10–cv–03153–RDR (D.Kan.), D.E. 1. The court ordered Petitioner to show cause why his petition should not be dismissed given the substantial similarity of his claims to those rejected by the court in

*Huschak v. Gray,* 642 F.Supp.2d 1268 (D.Kan. 2009). *Gonzales,* 5:10–cv–03153–RDR, at D.E. 9. On October 14, 2010, Petitioner chose to withdraw his petition, but reserved the right to re-file at a later date once he acquired legal counsel. *Gonzales,* 5:10–cv–03153–RDR, at D.E. 10.

United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b))).

■ Further, in a military case, "[w]here there is no colorable jurisdictional question, a finding of full and fair consideration ends our habeas corpus inquiry." *Witham v. United States*, 355 F.3d 501, 505 (6th Cir.2004) (citing *Burns v. Wilson*, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953)); *see also Lips v. Commandant, United States Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir.1993) ("[I]f the military gave full and fair consideration to claims asserted in a federal habeas corpus petition, the petition should be denied.").

## III. ANALYSIS

■ As an initial matter, Respondent has argued that the Commandant of the United States Disciplinary Barracks ("USDB") in Fort Leavenworth, Kansas, is not a proper respondent in this action. [D.E. 16 at 8]. The Court agrees. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004) (quoting 28 U.S.C. § 2242). Therefore, when a petitioner is in physical confinement, "the proper respondent is the warden of the facility where the prisoner is being held...." *Id.* at 435, 124 S.Ct. 2711. Because Petitioner is no longer imprisoned in Kansas, but, rather, is imprisoned at FMC Lexington, the Commandant USDB in Kansas no longer has custody over Petitioner; thus, it is not a proper respondent, and the petition against the Commandant USDB in Kansas is dismissed.

Moving on to the substance of Petitioner's claim, he argues that his placement in the MSR program and subjection to MSR conditions are unlawful violations of his due process rights because 1) he has already served his full sentence, and 2) his original sentence did not include supervised release nor required him to register as a sex offender. [D.E. 1 at 3, 7]. Therefore, Petitioner argues that the ACPB's imposition of these punishments operates as an unlawful increase of his sentence. [D.E. 1 at 3].

■ First, however, Petitioner's assertion that he finished serving his full sentence on August 27, 2010, his former minimum release date, is flawed. Serving until one's minimum release date does not mean that one has served a full sentence, because the two dates are inherently different. Specifically, serving one's full sentence means that one has served the entirety of the sentence imposed by the sentencing authority, whereas the minimum release date is the adjusted date for a prisoner's release once deductions or forfeitures of good conduct time and other abatements have taken place. [D.E. 16–9, Army Regulation 633–30, at 31–33]; *see also Miller v. Air Force Clemency & Parole Bd.*, No. JFM–10–2621, 2011 WL 4402497, at *13 (D.Md. Sept. 20, 2011) ("A prisoner's Minimum Release Date (MinRD) is computed by changing the Adjusted Maximum Release Date to account or any sentence abatements or forfeitures.").

In this instance, there is no question that Petitioner has not served eleven years and nine months, which represents his full sentence of confinement.[3] [D.E. 16–2 at 28]. Moreover, although August 27, 2010,

---

3. Petitioner was sentenced on August 21, 2003. [D.E. 1–1 at 7]. Thus, the eleven years and nine months, minus the sixty-one days of credit given by the sentencing authority, will not, at this Court's calculation, come to pass until March 20, 2015 (i.e. his maximum release date).

was Petitioner's minimum release date at one time, Petitioner has since forfeited and earned abatement credits such that his minimum release date currently rests at May 27, 2013. [D.E. 16–3 at 6]. Thus, to the extent that Petitioner's argument is based on the premise that he has served his full sentence on August 27, 2010, it is fatally flawed.

■ Because Petitioner has not served his full sentence, his second argument, that the imposition of the MSR program and its conditions operate as an unlawful increase of his sentence in .violation of his due process rights, also fails. To this Court's knowledge, the Sixth Circuit has not specifically considered the general validity of the MSR program, nor whether its imposition constitutes a sentence increase when one has not served their full sentence. However, other district courts from sister circuits that have recently addressed the issue have unilaterally agreed that MSR does not operate as a sentence increase so long as the MSR supervision period lasts no longer than the original, court-imposed sentence. *See Huschak v. Gray*, 642 F.Supp.2d 1268, 1276–81 (D.Kan.2009); *Moultrie v. Sec'y of the Army*, 723 F.Supp.2d 1230, 1237 (C.D.Cal. 2010); *Miller*, 2011 WL 4402497, at *12.

■ For example, in *Huschak*, the petitioner was sentenced to eight years of confinement, and, had he conformed to the conditions of MSR, would have served less

than eight years. *Huschak*, 642 F.Supp.2d at 1277. However, because he violated his MSR conditions, he forfeited good conduct time. *Id.* Regardless, the District of Kansas found that there was no "increase" in punishment because he would not serve more than the original eight years of confinement. *Id.* In *Moultrie*, the Central District of California similarly dismissed the petitioner's claims that his punishment was increased in violation of his due process rights by being placed on MSR because there was no evidence that his punishment had been increased beyond the 112–month total sentence. *Moultrie*, 723 F.Supp.2d at 1237. Again in *Miller*, the District of Maryland found that placement on MSR, even when it is not mentioned in the original sentence, does not operate as a sentence increase because "conditional release from confinement, albeit with conditions, is not punishment." *Miller*, 2011 WL 4402497, at *12. The Court agrees with the analysis in the above · cases, and, therefore, finds that the MSR program does not operate as an administrative sentence increase in violation of Petitioner's due process rights since he will not be confined for longer than his full term of imprisonment.[4]

Petitioner's reliance on *Hill v. United States ex rel. Wampler*, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283 (1936), and *Earley v. Murray*, 451 F.3d 71 (2d Cir.2006), to support his claim that the MSR program

---

4. The Court recognizes that "due process requires some evidentiary basis for a decision to revoke good time credits...." *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). As far as this Court can tell, Petitioner does not assert any deprivation in this regard. Regardless, the DAB afforded Petitioner due process prior to revoking his abatement credits. For example, prior to the DAB's revocation of his abatement credits, Petitioner received a hearing, was given the opportunity to present arguments on his be-

half, and was informed that if he simply complied with their order to create a valid MSR plan, his credits would be restored. Moreover, Petitioner does not contest that he failed to follow the ACPB's and DAB's orders to create MSR plans, which provides the "some evidence" necessary to charge him with violating a lawful order. *Id.* at 454, 105 S.Ct. 2768. The above certainly meets the less-stringent due process standard applicable in prison disciplinary proceedings. *Id.* at 455–56, 105 S.Ct. 2768.

and its conditions operate as an improper sentence increase are misplaced. First, Petitioner cites *Hill* for the proposition that the "only sentence known to the law is the sentence or judgment entered upon the records of the court." *Hill*, 298 U.S. at 464, 56 S.Ct. 760; [D.E. 1 at 4]. However, the Court agrees with Respondent's argument that this proposition is inapposite to Petitioner's case, since he is not seeking to enforce his original sentence, but, rather, suggests a nearly four-year downward departure from it.

Moreover, Petitioner relies on *Earley* for the proposition that a subsequent addition to a sentence that is not imposed by the sentencing judge is unlawful. *Earley*, 451 F.3d at 75; [ D.E. 1 at 4]. However, in *Earley*, the defendant served four years of his six-year sentence and was *then* subjected to a five-year post-release supervision period as required under state law. *Id.* The Second Circuit held that because the original sentencing judge did not include a term of supervised release in the sentence, the administratively-added five year supervised release term was contrary to clearly established federal law since it increased his sentence by three years. *Id.* at 75–76. Thus, the *Earley* decision is incomparable to Petitioner's situation since there is no chance that the MSR program would have ever required Petitioner to be supervised for longer than his full sentence. *See Miller*, 2011 WL 4402497, at *12 n. 16 (finding that the *Hill* and *Earley* decisions were "inapposite" to the petitioner's case because "his placement on MSR with conditions did not add to his sentence.").

■ Although the Court concludes that the MSR program and its conditions do not increase Petitioner's sentence, it is necessary to address one of Petitioner's collateral arguments. Specifically, Petitioner argues that the MSR condition that he complete a child sex offender rehabilitation program operates as a sentence increase since the sentencing authority did not mention the above punishment in its original sentence. However, pursuant to Department of Defense Instruction 1325.7, "[a] Clemency and Parole Board may establish and subsequently modify conditions of release as it considers reasonable and appropriate, such as the requirement to begin or continue treatment for alcohol or substance abuse." [D.E. 16–10 at 26]. Moreover, pursuant to any system of parole, prisoners are required to conform to "certain rules during the balance of the sentence." *Samson v. California*, 547 U.S. 843, 850, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). Thus, the ACPB had the authority to impose this requirement on Petitioner, particularly since he was to be released on MSR far before his full sentence terminated. Further, Petitioner also focuses on the requirement that he register as a sex offender once released. However, Respondent correctly points out that whether Petitioner is required to register as a sex offender depends upon the state law in the state in which he ultimately chooses to reside, and is completely independent of his MSR conditions. Regardless, the Sixth Circuit has determined that sex offender registration requirements do not amount to custody, and, therefore, habeas relief from such requirements is inappropriate. *Leslie v. Randle*, 296 F.3d 518, 523 (6th Cir.2002).

■ Finally, Petitioner seems to imply through his argument that the MSR program is not a system of parole.[5] However,

5. Specifically, Petitioner argues that the "imposition of supervised release for prisoners who have not been granted parole, meaning prisoners who are being released because they have served their sentences, is an unlawful administrative extension of a prisoner's sentence." [D.E. 1 at 5–6].

parole has been defined by the Supreme Court as follows:

> The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. Under some systems, parole is granted automatically after the service of a certain portion of a prison term. Under others, parole is granted by the discretionary action of a board, which evaluates an array of information about a prisoner and makes a prediction whether he is ready to reintegrate into society.
>
> Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed.

*Morrissey v. Brewer,* 408 U.S. 471, 477–78, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). When this definition is considered, it is clear that MSR fits within the framework of parole systems, as prisoners in MSR are "required to serve the balance of [their] sentence[s] outside of confinement on the condition that [they] abide by certain rules." *Huschak,* 642 F.Supp.2d at 1276. "It does not matter whether the conditions [are] voluntary or involuntary," since, "[a]s the Supreme Court stated, under some parole systems release is automatic." *Id.; see also Moultrie,* 723 F.Supp.2d at 1236 (holding that MSR is a system of parole); *Miller,* 2011 WL 4402497 (same). Further, statutory authority for the MSR program is provided in 10 U.S.C. § 952, which provides that "[t]he Secretary concerned may provide a system of parole for offenders who are confined in military correctional facilities and who were at the time of commission of their offenses subject to the authority of that Secretary." 10 U.S.C. § 952(a). Thus, there seems to be no question that MSR is a valid system of parole that the ACPB was statutorily authorized to impose.

Therefore, having carefully considered Petitioner's writ, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [D.E. 1] is **DENIED.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner's Motion to Alter or Amend this Court's Judgment. [D.E. 22, 23]. The matter being fully briefed, it is now ripe for review.

### I. Procedural Background

Petitioner filed a Petition requesting a Writ of Habeas Corpus under 28 U.S.C. § 2241. [D.E. 1]. This Court denied Petitioner's request for a writ of habeas corpus [D.E. 19] and dismissed Petitioner's action with prejudice. [D.E. 20]. Petitioner subsequently filed two letters with the Court [D.E. 22, 23], which the Court construes jointly as a Motion to Alter or Amend this Court's earlier Judgment dismissing Petitioner's action [D.E. 21], pursuant to Federal Rule of Civil Procedure 59(e). Respondent filed her Response [D.E. 25] and Petitioner filed a Reply [D.E. 29]. According to the Federal Bureau of Prisons (FBOP) website, Petitioner was released from the Federal Medical Center in Lexington, Kentucky on May 24, 2013.

### II. Standard of Review

"Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become available; or (3) because it is necessary to correct a clear error of law or prevent manifest injustice." *General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No. 957 v. Dayton Newspapers, Inc.,* 190 F.3d 434, 445 (6th Cir.1999) (Clay J., dissenting) (citations

omitted). "A motion under Rule 59(e) is not intended to provide the parties an opportunity to relitigate previously decided matters or present the case under new theories." *Doe v. Patton,* 381 F.Supp.2d 595, 604 (E.D.Ky.2005) (citing *In re Larson,* 103 B.R. 896, 897 (Bankr.S.D.Ohio 1989)). The law is clear that Federal Rule of Civil Procedure 59 is not intended to allow a party to "rehash" old arguments. *Helton v. ACS Group,* 964 F.Supp. 1175, 1181 (E.D.Tenn.1997) (citations omitted).

### III. Analysis

Petitioner offers several reasons why the Court should alter or amend its previous Judgment. The Court finds that each of Petitioner's arguments were previously raised or "could, and should, have been made before judgment issued" and are, therefore, not proper for relief under Rule 59(e). *Fed. Deposit Ins. Corp. v. World U., Inc.,* 978 F.2d 10, 16 (1st Cir.1992) (citations omitted). Thus, while the Court does not find that any of the stated reasons constitute the change in controlling law, new evidence, clear error of law or manifest injustice necessary for altering or amending its previous Judgment, each of Petitioner's points will be discussed in turn.

Petitioner argues that mandatory supervised release (MSR) had not been created when he committed chargeable offenses, while also admitting that Department of Defense Instruction (DODI) 1325.7, which creates the MSR requirements, was in effect at the time of his confining offense. [D.E. 29, at 2]. The Court must first consider whether Department of Defense Instruction (DODI) 1325.7 is applicable to Petitioner. It is well established that MSR was created in 2001. *Moultrie v. Sec'y of the Army,* 723 F.Supp.2d 1230, 1235 (C.D.Cal.2010) ("The Department of Defense introduced MSR in 2001."); *Huschak v. Gray,* 642 F.Supp.2d 1268, 1273 (D.Kan.2009) ("MSR started in 2001.");

*United States v. Pena,* 64 M.J. 259, 262 (C.A.A.F.2005) ("In 2001, the DoD introduced an additional early release mechanism, the Mandatory Supervised Release program."). Petitioner's confining offenses occurred after 2001. [D.E. 1–1]. Petitioner argues that DODI 1325.7 is not applicable to him because the Under Secretary of Defense incorporated Change One to the Instruction on June 10, 2003, after Petitioner committed his offenses. [D.E. 29, at 5]. Petitioner's argument, however, does not account for the changes actually made to the Instruction in 2003. Change One only changed the acknowledgement form that must be signed by prisoners convicted of sex offenses requiring registration, thereby leaving the substantive MSR provisions unchanged. DOD Instruction (DODI) 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority,* § 6.18.5.2 (2003).

The Instruction, as implemented in 2001, provided that "it shall be the policy of the Department of Defense to use supervised release in all cases except where it is determined by the Service Clemency and Parole Boards to be inappropriate," DODI 1325.7 § 6.20.1, and "[r]equires supervised release for prisoners not granted parole prior to their minimum release date." DODI 1325.7 § 1.4. Therefore, Petitioner is subject to the MSR requirements.

Petitioner next asserts that the United States Parole Commission (USPC) does not have jurisdiction over Petitioner or his sentence. [D.E. 23]. However, because Petitioner had been transferred to the FBOP, the USPC has power over Petitioner. DODI 1325.7 § 6.20.8 ("Military prisoners who have been transferred to the FBOP and are given early release through good time credits may be placed under mandatory supervision 'as if on parole.' The U.S. Parole Commission will deter-

mine the terms and conditions of any such mandatory supervision."); Army Regulation 15–130, *Army Clemency and Parole Board,* Ch. 3 § 3–1(e)(9) (1998) ("Prisoners transferred to Federal facilities are under the control of the U.S. Parole Commission, unless otherwise designated in writing.").

Petitioner, for the first time in his Motion to Alter or Amend, asserts that his court martial plea of guilty was improvident because the military judge did not properly ensure that Petitioner understood he would be subject to registration as a sex offender. [D.E. 23, at 2]. While Petitioner is correct that *United States v. Riley* imposes this requirement on military judges, this precedent did not exist when Petitioner was sentenced. *See United States v. Riley,* 72 M.J. 115 (C.A.A.F.2013). Furthermore, the case requiring that attorneys advise their clients that a guilty plea will subject them to sex offender registration requirements was not decided until 2006, and declared that the decision only applies to "cases tried later than ninety days after the date of this opinion." *United States v. Miller,* 63 M.J. 452, 459 (C.A.A.F.2006). Therefore, the military judge and Petitioner's counsel complied with the law in effect at the time of Petitioner's guilty plea, and Petitioner's argument fails.

Petitioner next argues that Army Regulation 633–30 controls the computation of his sentence, and, therefore, his sentence, including any possibility of MSR, has terminated. Petitioner is correct, in so far as AR 633–30 controls the computation of his sentence. However, this does not lead to the conclusion that Petitioner has completed his sentence. The Court again emphasizes that serving until one's minimum release date, and serving the full term of one's sentence are fundamentally different concepts. Because good time credit or abatement is awarded does not mean that Petitioner's sentence was reduced. *See*

*Fredenburg v. United States,* No. 2009–10, 2009 WL 4250099, at *3 (A.F.Ct.Crim.App. Nov. 9, 2009) ("[G]ood conduct time is not part of an adjudged sentence and is simply a collateral consequence of the petitioner's sentence."); *United States v. Pena,* 61 M.J. 776, 779 (A.F.Ct.Crim.App.2005) ("MSR in DOD is not part of the adjudged sentence or approved sentence, and the period of supervision does not extend past a prisoner's maximum release date."); *see also United States v. Miller,* No. 2009–14, 2010 WL 2342422, at *2 (A.F.Ct.Crim.App. May 27, 2010) ("The petitioner was sentenced to 12 years of confinement ... he has no reasonable right to expect that he will serve less than the approved sentence."). Rather, "[good conduct time] is considered an abatement of a sentence *to confinement.*" *Huschak v. Gray,* 642 F.Supp.2d 1268, 1274 (D.Kan.2009) (emphasis added). Thus, while Petitioner may no longer be subject to physical confinement, his sentence will only be terminated when he has served the entirety of his approved sentence, whether that be in confinement or on MSR.

Petitioner, for the first time, claims that his sentence was lengthened only by the application of DODI 1325.7–M, which did not take effect until 2004. The Petitioner, however, points to no evidence, and the Court finds none, that DODI 1325.7–M is being used to compute his sentence. Contrary to this claim, Petitioner was informed that AR 633–30 controlled the computation of his sentence, while DODI 1325.7 controlled the MSR requirements. [D.E. 16–4, at 126].

Finally, Petitioner sets out five reasons why his good conduct time was improperly forfeited. Two of the reasons, that requiring him to submit an MSR plan was not a proper requirement and that there was not an applicable regulation requiring him to submit an MSR plan, are flawed based

upon the finding that Petitioner is subject to MSR, as discussed above.

Petitioner next claims his good conduct time was improperly forfeited because the Chairman of the Army Clemency and Parole Board (ACPB) does not have authority to issue an order under Article 92 of the Uniform Code of Military Justice (UCMJ). The ACPB has been given the power to oversee a system of parole by orders from the Secretary of the Army.

> Congress has authorized each military service Secretary to provide 'a system of parole for offenders who are confined in military correctional facilities.' 10 U.S.C. § 952.... Department of Defense Directive 1325.4, Confinement of Military Prisoners and Administration of Military Correctional Programs and Facilities (May 19, 1988) [hereinafter DOD Dir. 1325.4], requires each Secretary to establish a Clemency and Parole Board to assist the Secretary in executing his statutory clemency and parole responsibilities. The Secretary of the Army has issued AR 15–130, to implement the clemency and parole provisions of DOD Dir. 1325.4, including a delegation of clemency and parole authority to the Deputy Assistant Secretary of the Army ... and establishing the Army Clemency and Parole Board to assist him in making clemency and parole determinations, and tailoring a parole plan for each parolee.

*United States v. Smith,* 44 M.J. 720, 724 (A.Ct.Crim.App.1996). The ACPB is merely acting pursuant to power granted by the Secretary of the Army. Inherently, this gives the ACPB the power to issue orders pertaining to parole and MSR decisions.

Petitioner next claims that his good conduct time was improperly forfeited because he did all he could to comply with the order to submit an MSR plan. However, documents submitted to the Court belie this assertion. On two occasions, a Supervised Release Assistant stated that "Inmate Gonzales has continually fought the MSR system and continues to do so. I feel he will not cooperate with our efforts to locate suitable residence for his release. We should expect more hindrance than help from this inmate." [D.E. 16–1, at 21, 23]. Furthermore, in a July 20, 2010 memorandum, the same Supervised Release Assistant indicated that, rather than receive aid in preparing an MSR plan, Petitioner "spent the entire interview addressing the MSR issue as a whole and how he should not be eligible for the program in the first place." *Id.* at 22.

Lastly, Petitioner argues that his good conduct time was improperly forfeited because he was denied due process when his good conduct time was forfeited based on a violation of Article 92 of the UCMJ. [D.E. 29, at 9]. Petitioner makes this conclusory statement, but does not attempt to support the assertion with any evidence. The Court notes that before having his good conduct time forfeited in 2010, Petitioner appeared in front of a three-member Disciplinary and Adjustment Board and signed an acknowledgement form stating that he understood he had the right to have an attorney present at the proceedings. [D.E. 16–3, at 96]. Thus, Petitioner's claim that his good conduct time was improperly forfeited is meritless.

## IV. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion to Alter or Amend [D.E. 22, 23] be, and the same hereby is, **DENIED.**